1

```
 1            IN THE UNITED STATES BANKRUPTCY COURT
              FOR THE NORTHERN DISTRICT OF ILLINOIS
 2                       EASTERN DIVISION

 3

 4   In re:                         )
                                    ) No. 06B10562-3
 5   K & P AUTOMOTIVE, INC. and     )
     ASHOK PARIDA,                  )
 6                                  ) Chicago, Illinois
                                    ) May 11, 2010
 7               Debtors.           ) 10:30 a.m.

 8

 9        TRANSCRIPT OF PROCEEDINGS BEFORE THE
               HONORABLE CAROL A. DOYLE
10

11   APPEARANCES:

12

     MR. ANDREW MAXWELL,
13   counsel of record for K & P;

14   MR. ROMAN SUKLEY,
     on behalf of the United States Trustee.
15

16

17

18

19   ALSO PRESENT:

20
     Mr. Ashok Parida
21

22

23

24

25
```

1       THE CLERK:  K & P Automotive,
2  Incorporated, and Ashok Parida.
3       MR. SUKLEY:  Good morning, Judge.  Roman
4  Sukley on behalf of the United States Trustee.
5       MR. MAXWELL:  Good morning, Your Honor.
6  Andrew Maxwell.  I am still counsel of record for
7  K & P.
8       THE COURT:  Right.
9       MR. MAXWELL:  And a creditor in the
10 Parida case.
11      THE COURT:  Correct, and I could have
12 sworn I saw --
13      MR. MAXWELL:  He was here.
14      THE COURT:  -- maybe Mr. Parida, but
15 maybe also the other lawyer that was here last time.
16      MR. SUKLEY:  He may have just stepped out
17 in the hall, Your Honor.
18      THE COURT:  Okay.
19      MR. MAXWELL:  He was here because we were
20 talking to him.
21      THE COURT:  Right.  Okay.  Why don't we
22 pass this one because now we have everybody on
23 another case that we were looking for all the
24 parties on, hopefully.  Sorry.
25      MR. MAXWELL:  Thank you, Your Honor.

1              THE COURT:  Just trying to do triage.
2     Okay.
3                    (Other matters heard.)
4              THE COURT:  Mr. Maxwell, let's see, so
5     now what do we have everybody on?
6                    Is Mr. Parida -- was he here?
7              UNIDENTIFIED SPEAKER:  He's in the
8     process to come here.  He is parking his car some
9     where.
10             THE COURT:  Okay.
11                   (Other matters heard.)
12             THE CLERK:  Recalling K & P Automotive
13    and Ashok Parida.
14             MR. PARIDA:  Good morning, Your Honor.
15             THE COURT:  Good morning.  State your
16    name, please, for the record.
17             MR. PARIDA:  Ashok Parida.
18             MR. SUKLEY:  Good morning, Judge.  Roman
19    Sukley on behalf of the United States Trustee.
20             MR. MAXWELL:  Again, Your Honor, Andrew
21    Maxwell, counsel of record for K & P Automotive and
22    a creditor in the Parida individual case.
23             THE COURT:  All right.
24                   Sir, are you wanting -- are you
25    representing Mr. Parida?  Okay.

```
 1            UNIDENTIFIED SPEAKER:  I'm just here --
 2            THE COURT:  All right.  If you intend to
 3  say anything, you would need to put your name on the
 4  record.  So, okay, that means you're not going to
 5  say anything.  Okay.
 6            MR. SUKLEY:  Judge, we're up on a number
 7  of continued matters.
 8            THE COURT:  Right.
 9            MR. SUKLEY:  The motion for possible
10  entry of a final decree, the U.S. Trustee's motion
11  to convert or dismiss in both of these cases.  The
12  last time we were before you I think we were acting
13  on the motion to convert or dismiss the cases.
14            THE COURT:  Right.
15            MR. SUKLEY:  I saw that the debtor has
16  filed voluntary conversions in both of the cases.
17            THE COURT:  Well, a motion to --
18            MR. MAXWELL:  Right.
19            THE COURT:  -- convert all.
20            MR. MAXWELL:  I think it's a motion to
21  convert in each case.
22            THE COURT:  Right, a motion to convert.
23            MR. SUKLEY:  My suggestion however,
24  Judge, would be to simply enter dismissal orders on
25  the U.S. Trustee motion in both of these cases
```

1   because the status that we are in now
2   post-confirmation, I'm not even sure what the assets
3   of the estate are.
4              THE COURT: Well, I'm pretty sure about
5   that. I'm assuming that the plans basically
6   revested property of the estate in the two debtors,
7   correct, Mr. Maxwell?
8              MR. MAXWELL: You know, I don't know the
9   answer to that this morning. And I realized as I
10  walked out without the plan that would be very
11  helpful.
12             THE COURT: Well, let me pull it up
13  because unless there is something really unusual in
14  these plans --
15             MR. MAXWELL: Well, my assumption, in all
16  honesty, would be that the plan administrator should
17  be in possession under the plan and the plan
18  administrator was supposed to have given a security
19  interest to secure the payments to the creditors
20  under each plan, a mortgage in Mr. Parida's
21  individual case, and a UCC-1 in the K & P case.
22  Mr. Parida refused to sign those documents also. So
23  what we have is a situation where there is a
24  mechanism in the plan, just like there was a
25  mechanism for payments, but none of those things

1  have taken place either.
2           THE COURT:  Okay.  I'm going to pull up
3  the plan, modified chapter 11 plan in the K & P
4  case; administrative claims, leases, priority --
5           MR. MAXWELL:  I think it's the section
6  after the classification of the claim.
7           THE COURT:  Right.  That would make
8  sense.  Implementation of the plan shall be funded
9  by net cash flow within sixty months, additional
10 funds set forth below, provide security.  Debtor
11 will grant a subordinate security interest in
12 tangible personal property including but not limited
13 to, et cetera, et cetera.  Is that part of what
14 Mr. Parida refused to do?
15          MR. MAXWELL:  Yes, Your Honor.  That
16 would be a security interest that would --
17          THE COURT:  Okay.
18          MR. MAXWELL:  -- be granted.
19          THE COURT:  -- to allowed claims. Plan
20 payments made to the plan administrator.  And who's
21 the plan administrator?
22          MR. MAXWELL:  Mr. Parida is the initial
23 plan administrator.
24          THE COURT:  Okay.  There are some very
25 interesting claims that could arise out of this

1    plan.  Okay.  Well, it doesn't say anything about --
2              MR. MAXWELL:  The place it might be, Your
3    Honor, is the last class of claims.  It should be
4    the equity security holders right before that part
5    about the security interest because it would provide
6    for the owner of the stock for a way to reacquire
7    the stock so there wouldn't be an absolute priority
8    rule issue.  And I don't know whether it requires a
9    specific dollar amount or -- I apologize.  I just
10   don't remember.
11             THE COURT:  Okay.  But basically it just
12   says funds go to the plan administrator, which is
13   Mr. Parida, to be paid.  It doesn't create like a
14   trust, right, or does it?
15             MR. MAXWELL:  Well, the plan
16   administrator was intended to be in the nature of
17   the trust.
18             THE COURT:  Shall establish a bank
19   account to administer the fund for the benefit of
20   claimants.  Okay.  But I guess basically what I'm
21   saying is that the assets of the debtor then become,
22   you know, post-confirmation, the assets of the
23   post-confirmation debtor.  Right?
24             MR. MAXWELL:  Yes, I think that would be
25   accurate.

1           THE COURT:  Okay.  So my point is I'm
2    with Mr. Sukley that there is really no estate.
3    There's no bankruptcy estate left post-confirmation
4    in this case.  There would have to be a pretty
5    unusual provision in the plan according to the cases
6    that I have read that would make there be anything
7    for a Chapter 7 trustee to do in these cases, okay?
8    So to me and under, you know, my reading of the case
9    law, there is no point in converting these cases
10   because you've gone through the plan confirmation
11   process and upon confirmation, generally speaking,
12   unless there is something really unusual in the
13   plan, the estate basically ceases to exist once a
14   Chapter 11 plan is confirmed.  So by converting, you
15   don't make a whole new case and you can't really
16   undo everything that is done.  So there would be a
17   Chapter 7 trustee in these cases who has nothing to
18   administer.  So it to me is a futile act.
19           And I will find for you -- let's
20   see, there are a lot of cases on these issues, but
21   one that I will find and cite is -- just one second.
22   There's one from this district in about 1991 talking
23   about all the possibilities.  The one in this
24   district, a bankruptcy court decision -- I don't
25   know, I don't remember who the judge was on it, but

1   it's In re TSP Industries, Inc., and that's at 117
2   B.R. 375, Bankruptcy Northern District of Illinois
3   1990 discussing the effect of conversion, and
4   basically saying, you know, when you look at how
5   Section 1112 and then Section 348(a) work, there is
6   really nothing there for a trustee to do.
7               So there is no point in converting
8   the case, either case as far as I'm concerned.  So I
9   think that it's clearly in the best interest of
10  creditors, which is who I am supposed to be looking
11  at, to dismiss the cases, not to convert them.
12              MR. MAXWELL:  The only thing I would ask
13  Your Honor is I have a pending motion to withdraw
14  for K & P, and it was put off because we have the
15  issue of whether a corporate case can continue --
16              THE COURT:  Right.
17              MR. MAXWELL:  -- without counsel.
18              THE COURT:  I will let you withdraw
19  before I dismiss the case.
20              MR. MAXWELL:  That's all I would ask.
21              THE COURT:  Absolutely.
22              MR. MAXWELL:  Great.
23              THE COURT:  I only didn't grant the
24  motion last time because it would be a very odd
25  situation, you know, you're really not supposed to

1   have a corporation that's not representing -- that
2   doesn't have counsel.
3          You know, Mr. Parida, you can't
4   represent your company.  There is no such thing as a
5   pro se, meaning no lawyer, company in court.  But I
6   am absolutely going to authorize the termination of
7   the attorney-client relationship where there has
8   been, to me, clearly no cooperation.
9          MR. MAXWELL:  Just so the record is
10  clear, I mean, my office did not advise K & P to
11  file a motion to convert.  My office did not give
12  any advice to K & P between the last time and today.
13         THE COURT:  All right.
14         MR. SUKLEY:  Judge, you should have
15  orders that were attached a long time ago.
16         THE COURT:  I do have orders.  Let's
17  see --
18         MR. SUKLEY:  If not, I have them that I
19  can hand up dismissing --
20         THE COURT:  One of them is telling the
21  debtor to pay in the K & P case nine seventy-five
22  for some U.S. Trustee fee.
23         MR. SUKLEY:  Your Honor, you can strike
24  the paragraphs that relate to the U.S. Trustee fees.
25  The $325 that was due and owing in the individual

1  case has been paid.
2           THE COURT:  Okay.
3           MR. SUKLEY:  And counsel handed me a
4  check for $650 for the corporate case this morning.
5           THE COURT:  Okay.  So that will take care
6  of that.
7           MR. SUKLEY:  Yes.
8           THE COURT:  Okay.  So, Mr. Parida, I'm
9  intending to dismiss your case based on the U.S.
10 Trustee's motion.
11          MR. PARIDA:  Well, uh --
12          THE COURT:  So I haven't let you say
13 anything but, you know, I thought about this legal
14 issue a lot.  I mean, I can't -- I'm really supposed
15 to look at what's in the best interest of the
16 creditors and not necessarily what's in your own
17 personal best interests.  And to me there is
18 absolutely no upside to the creditors of this case
19 going to a chapter -- either case going to a Chapter
20 7.  But I will let you say what you'd like to say.
21          MR. PARIDA:  Well, the thing is, sorry to
22 inform you that I was completely misled and confused
23 with my own Maxwell forum for my retainer as my
24 attorney.  I did not advise the proper way how this
25 plan is supposed to act.  And somehow he managed to

1   put himself as a creditor.  At this moment, the only
2   creditor I have is my own counselor who is supposed
3   to protect me from all this mishap that took place
4   three years ago.
5              Actual creditor which is the New
6   Castle is no longer in the picture.  Now I am liable
7   to certain fees and dues, which I strongly oppose,
8   and I was not sure of what those fees were.  And
9   whenever I questioned, I was kind of threatened that
10  he was going to withdraw.  At this point I had no
11  other recourse rather listen to Mr. Maxwell.  And I
12  doubt and question every portion of his bill.  I
13  cannot afford to give him $200 every time he sent me
14  an email.  Every time he downloaded a file that was
15  $60.  So those bills just produced to me -- all of
16  them I deny.
17             And now he is the creditor and
18  Mr. Slobig's firm.  They have depleted my complete
19  bank account.  I do not have anything to show of.
20  Actually it has taken up a lot of my time and
21  resources driving and coming to Chicago and many
22  times I have returned from the courtroom without
23  having informed that the case has been reassigned
24  for another date.  It has taken up my personal time.
25  It has cost me in the business which will not comply

1   with the plan because the plan was to pay from the
2   business income.  And for last four years it has
3   been a horrendous experience trying to drive around
4   and try to come and do my own and more.
5              THE COURT:  Okay.
6              MR. PARIDA:  So at this point I do
7   realize they are in their interest to get paid and I
8   have depleted all my bank account paying them what I
9   could.  So at this juncture I have nothing but
10  request, Your Honor, to make it a Chapter 7.  Let
11  them liquidate the assets and see what they can get
12  out of it.
13             THE COURT:  Well, let me just tell you
14  this:  Mr. Parida, you have taken advantage of the
15  Bankruptcy Code and you have, in my view, gotten
16  very good service out of your lawyers.  And to the
17  extent I have approved their fees, I do not just
18  rubber stamp people's fees.  I look at every single
19  fee application.  And there was -- to the extent
20  they were presented to me, there was nothing in his
21  fee application that was unusual.  You had to have
22  expected to pay for bankruptcy counsel's service.
23                  So you're trying to portray yourself
24  as the victim here.  And, I'm sorry, that portrayal
25  just doesn't work.  Okay?  You are not a victim

1 here.  You purposely avowed yourself of the
2 bankruptcy process.  And you got yourself some very
3 good results in bankruptcy.  It is absolutely
4 appropriate that you have to pay bankruptcy counsel
5 and Mr. Slo--
6 　　　　　　　　MR. MAXWELL:  Slobig.
7 　　　　　　　　THE COURT:  -- sorry, Slobig, right, the
8 one who represented you in the trial that I held
9 where they got a very good result for you.  And of
10 course you have to pay counsel on that.  There is no
11 such thing as a free ride in any adversarial system.
12 So I am not going to accept any of those
13 representations as accurate, but I don't need to
14 rule on that.  I just want to tell you that they're
15 not persuasive at all.  I have presided over this
16 case for as long as it's been here.  They have done
17 a very good job of representing you.
18 　　　　　　　　I have to say there have been a
19 number of times when you have not been cooperative
20 in this case and your counsel stuck with you when
21 many another debtor's counsel would have walked away
22 from this case a long time ago.  He persuaded me not
23 to dismiss your case any number of times when I was
24 ready to do it because you didn't do the basics that
25 you have to do in bankruptcy.  So I think you got

1  very good representation from this counsel and that
2  they stuck in there with you when many lawyers would
3  have walked away and I was ready to dismiss your
4  case and you would have gotten nothing in terms of
5  any real result from this bankruptcy.
6              So I don't accept, really, any of
7  your representations as being any basis for me to do
8  anything otherwise than what I'm intending to do in
9  this case because I have lived through this case
10 through these last years, and you clearly have not
11 complied with the plan.  I think you have the idea
12 you just don't have to because you don't like their
13 attorney fees.  But you undertook some pretty
14 serious obligations in these cases and --
15             MR. PARIDA:  May I just ask --
16             THE COURT:  -- that's what's in the plan
17 and, you know, it is what it is, okay?  And where it
18 goes from here, the dismissal of these cases doesn't
19 get you out of these obligations either.  These are
20 binding orders essentially that will survive the
21 dismissal of these cases.  So dismissal of this case
22 doesn't really change your obligations.  It means
23 you won't get a discharge in your case, but the
24 obligations will go on.  I mean, you do still get
25 the benefit of that ruling with respect to your

1  landlord because without the bankruptcy then they
2  would be the ones collecting their, you know,
3  200,000 plus from you.
4              But I can't take any more time on
5  this.  I've got another case to deal with.  And I
6  have given you a lot of time in this case and I have
7  given you many, many chances, Mr. Parida.  And it's
8  unfortunate that it comes to this, but it's really
9  the result of you not complying with the plan that
10 was quite favorable to you and actually I think a
11 reasonable resolution of the case, of both cases
12 really for you.  But there is absolutely no reason
13 for me to convert these cases for all the reasons
14 that I have stated before, and I cited that one
15 case, but there's a whole lot of cases on these
16 issues.
17         MR. PARIDA:  Well, it's unfortunate that
18 if I could not trust my own counselor, I do not know
19 what else I could tell you.
20         THE COURT:  Well --
21         MR. PARIDA:  The bottom line is you are
22 looking at things superficially.  And actually the
23 real content of the case is a lot more deeper than
24 that.
25         THE COURT:  Well, of course.

1             MR. PARIDA:  And I felt like I was a
2    victim of the system.
3             THE COURT:  All right.  I know you do,
4    but I just cannot countenance that view.
5             MR. PARIDA:  I understand.  Okay.
6             THE COURT:  And you are absolutely
7    correct, Mr. Parida.  I only see this much --
8             MR. PARIDA:  Yes.
9             THE COURT:  -- of most cases.  But I have
10   seen a lot in this case because I've had a trial and
11   this has been going on for a long time.  I remember
12   this case --
13            MR. PARIDA:  I do realize that.
14            THE COURT:  -- quite well.  So I've seen
15   more of this than most cases, all right?  And I'm
16   just putting my remarks on the record because I feel
17   like I can state what I've said based on what I have
18   observed in this case over time knowing that, of
19   course, no judge ever knows everything that goes on
20   in a case.  That's inappropriate.  You know, you
21   have your attorney-client privilege to protect you
22   and that's a good thing.
23                 But with that, I feel the only
24   reasonable result in the cases is to dismiss both
25   cases really just based on how the law works in a

1   confirmed Chapter 11 case.  You know, there is
2   really nothing to convert.  So it just makes no
3   sense to convert either case at this point.  So I
4   really need to dismiss it.
5               MR. PARIDA:  Well, this is what I
6   received from the U.S. trustees.  They were trying
7   to convert to Chapter 7 or dismiss.
8               THE COURT:  Well, they did file a motion
9   seeking either one.
10              MR. PARIDA:  Right.
11              THE COURT:  I wasn't sure really why they
12  were seeking to convert.
13              MR. PARIDA:  Why was that?  If that was
14  not possible at all, I don't know why they're even
15  doing it.
16              THE COURT:  You know, that's their --
17  they filed it that way.  I get that.  I'm not
18  faulting you for filing your motion, but based on my
19  reading of the law and, you know, the practicality
20  of this case, the only appropriate remedy is --
21              MR. PARIDA:  So where do I go from here?
22              THE COURT:  I can't tell you that, sir.
23              MR. PARIDA:  Okay.
24              THE COURT:  That's what you've got to
25  figure out on your own.  I just have to decide

1   disputes that are before me.  So, okay, I've signed
2   both of those orders.  And we'll get the order
3   entered withdrawing the appearance -- abundantly
4   clear that Mr. Maxwell is no longer representing the
5   company.  And I'll get those entered before we
6   dismiss the case, before we enter the orders
7   dismissing the case.
8             MR. MAXWELL:  Your Honor should probably
9   deny the motions to convert.
10            THE COURT:  So true.  I should deny that.
11  I will deny the motions that you filed, Mr. Parida,
12  to convert the cases.
13            MR. PARIDA:  Your Honor --
14            THE COURT:  Oh, they weren't?  Okay.
15  Well, let's just deny them anyway just to make sure.
16            MR. PARIDA:  I'm just trying to
17  understand the legal implication of conversion or
18  dismissal, whatever the case may be, however you
19  arrive at the conclusion.  If there is any reason
20  that can be repaired, I guess I'll seek the
21  counselor's advice what I should do next.  But at
22  this moment I'm completely broke, giving all the
23  money I had to Mr. Maxwell.  I told him I really
24  don't have anything to give.
25            THE COURT:  Well, I can't give you

1  advice.
2          MR. PARIDA:  Okay.
3          THE COURT:  I mean, you're sort of going
4  to that next step and saying, "Okay.  Now tell me
5  what to do, Judge."  And I absolutely can't do that.
6  I can explain the reasons for my ruling, but I can't
7  give you legal advice.
8          MR. PARIDA:  Okay.
9          THE COURT:  And you have somebody here
10 who I think isn't representing you right in this
11 hearing, but perhaps he can -- I don't know how much
12 he is going to represent you, but, you know, you
13 really need to consult with somebody who can look at
14 your situation and give you legal advice.  That's
15 what you absolutely need right now.  Okay.  All
16 right.
17         MR. MAXWELL:  Thank you, Your Honor.
18                  (Which were all the proceedings
                     had in the above-entitled cause,
19                   May 11, 2010.)
20

21 I, BARBARA A. CASEY, DO HEREBY CERTIFY THAT THE
   FOREGOING IS A TRUE AND ACCURATE TRANSCRIPT OF
22 PROCEEDINGS HAD IN THE ABOVE-ENTITLED CAUSE.
23
24
25